CUTRER, Judge.
This is an expropriation case involving a 97 acre tract of land expropriated by the Lafayette Airport Commission and the Lafayette Parish Police Jury for extension of runways at the Lafayette Municipal Airport. A prior appeal in this case raised issues as to valuation and leasehold interest. After carefully reviewing the record in this complex case we amended the trial court judgment to substantially increase the award to the landowners. In addition, we reversed the judgment in part to recognize the leaseholder’s interest and award the leaseholder the fair market value of its ownership.[1] On application for rehearing, defendants requested that we make specific awards in relation to expert fees and other costs which plaintiffs were condemned to pay. Noting a lack of evidence in the record on the appropriateness of the claimed fees, we refused to fix those fees.
On October 11, 1972, defendants, Acadi-an Development Corporation and the Roy heirs, lessee and landowners respectively, filed a motion requesting the trial court to fix the expert fees. Depositions of the experts were taken and filed into evidence in order to give the trial court some basis for determining a proper award for these fees. On March 12, 1975, a judgment was signed fixing the expert fees and taxing them as court costs against the Lafayette Airport Commission. An appeal has been taken by the Commission from that judgment.
On February 12, 1975, defendant, Leola Martin Roy, filed a motion in the trial court requesting permission for the Clerk of Court to release to her from the court’s registry $12,180.43, representing principal and accrued interest on the award made in the expropriation proceedings to W. W. Rucks, III, Paula Roy Simon and Margaret Roy Rucks. She claimed as the basis for her right to this money her status as testamentary usufructuary under the will of her husband, C. Willis Roy. On September 11, 1975, a judgment was signed directing the Clerk of Court to pay to Mrs. Roy the aforementioned sum. An appeal has been taken by W. W. Rucks, III, Paula Roy Simon and Margaret Roy Rucks from that judgment. We will deal first with this latter appeal.
USUFRUCT
The circumstances out of which this controversy arose are undisputed. A stipula *185 tion of facts was entered into by the parties and presented to the lower court. A brief summary of those facts is as follows: C. Willis Roy (hereinafter referred to as “Decedent”), the husband of Leola M. Roy, died on June 15, 1946, owning an undivided one-tenth interest in acreage in Lafayette Parish, a portion of which is the property expropriated by the plaintiffs. The one-tenth interest owned by decedent constituted his separate property. The decedent was married once. His wife, who survived him, was the plaintiff-in-rule, Leola M. Roy, and of their marriage Charles W. Roy, Jr., Stewart Martin Roy, Ethelyn Roy Gabriel, Paula Roy Simon and Margaret Roy Rucks were the only issue. The decedent left a last will and testament dated August 15, 1940. His succession was opened and judgments of possession were rendered on October 11, 1946 and April 15, 1948. A commercial sand deposit was discovered on the property in 1956, and sand mining operations were commenced in 1957 by Acadian Development Corporation, which held sand mining leases from all owners of the property. Ethelyn Roy Gabriel died in 1959, and at her death she was survived by her daughter, Donna Gabriel Civello, her only heir, who succeeded to ownership of her interest in the property. By deed dated October 5, 1959, as amended on May 27, 1960, Charles W. Roy, Jr., conveyed to W. W. Rucks, III, and Margaret Roy Rucks all of his right, title and interest in and to the property, including all sand, gravel and shell deposits therein, subject to the reservation of certain oil, gas and hydrocarbon mineral rights. Sand mining operations were continuously conducted on the property between 1957 and January 30, 1970, the effective date of the expropriation. At all times prior to January 30, 1970, the property was low and poorly drained and unfit for cultivation, habitation or any surface use other than hunting, fishing and sand mining operations, and except for oil and gas lease bonus and rental payments and sand royalties, the owners of the property never received any revenue or income from the land.
On May 26, 1972, this court rendered a decision in which a total award of $252,087.50, exclusive of interest, was made as compensation for the acreage expropriated and severance damages in connection with a portion of the remaining property. Of the total award, $163,087.50 was allocated to the landowners, and of this amount ten percent, or $16,308.75, represented the one-tenth interest formerly owned by the decedent. Of this amount, $3,261.75 was allocable to Donna Gabriel Civello, $3,261.75 was allocable to Stewart Martin Roy, $3,261.75 to Paula Roy Simon, $3,261.75 to Margaret Roy Rucks and $3,261.75 to W. W. Rucks, III, and Margaret Roy Rucks, jointly.
The dispute exists between Leola M. Roy, on the one hand, and W. W. Rucks, III, Margaret Roy Rucks and Paula Roy Simon, on the other, as to their respective rights to the expropriation award and accrued interest. Under the will of decedent, Leola M. Roy was given a usufruct over the property inherited by decedent’s children. It is the contention of Mr. and Mrs. Rucks and Mrs. Simon, defendants-in-rule, that the testamentary usufruct in favor of Mrs. Roy terminated vldien the property was expropriated, and that as naked owners of the property they are entitled to that portion of the proceeds representing their three-fifths of one-tenth interest in the property. Alternatively, they contend that since the sand mining operations were not in existence at the time the usufruct was created, the usufructuary is not entitled to that portion of the proceeds representing compensation for the expropriated and severed rights of defendants-in-rule to explore for and withdraw sand from the property, and to receive royalty payments and other economic benefits in connection with their lease of such rights to others.
The argument of appellants, Mr. and Mrs. Rucks and Mrs. Simon, with respect to their rights to the compensation *186 for the loss of the right to explore for or withdraw sand from the property is based on LSA-C.C. article 552,[2] which provides as follows:
“The usufructuary has a right to the enjoyment and proceeds of mines and quarries in the land subject to the usu-fruct, if they were actually worked before the commencement of the usufruct; but he has no right to mines and quarries not opened.”
The testamentary usufruct in favor of ap-pellee, Mrs. Roy, was established in 1946. The sand deposit was not discovered on the property until 1956, and the sand mine was not opened until 1957. Under the above provision of the Civil Code, appellee is without any right to explore for or withdraw sand from the property, or to receive or share in the royalty income and other economic benefits from the sand mine. She was without any right to prevent the naked owners or their lessee from entering on the property-and conducting mining operations. King v. Buffington, 240 La. 955, 126 So.2d 326 (1961); Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960). Therefore, we hold that appellee, Mrs. Roy, was not entitled to withdraw from the court’s registry that portion of the proceeds representing compensation for the expropriated and severed rights to explore for and withdraw sand from the property.
Appellants’ principal argument attacking the ruling of the lower court is that the expropriation of the property subject to the testamentary usufruct constituted a “loss, extinction or destruction” of the property within the meaning of LSA-C.C. article 613, and effected a destruction of the testamentary usufruct by operation of law. We find that the usufruct granted to appellee, Mrs. Roy, was not destroyed. Rather, it was expropriated by the Lafayette Airport Commission and compensation is due as a result of this taking of Mrs. Roy’s interest.
Under LSA-C.C. article 533, usufruct is “the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing.” The petition of the expropriating authority clearly sets out the intention to expropriate not only the naked ownership but all elements of perfect ownership: the right to use, to enjoy and to dispose. LSA-C.C. article 491. The petition specifically includes Mrs. Roy’s usufruct. Since the expropriation included not only the third element of ownership but the first two as well, which were vested in Mrs. Roy, she is entitled to compensation for the taking of her interest by the expropriating authority.
Just compensation for the land expropriated in this case was determined earlier by this court. Once that total amount has been established it is Mrs. Roy’s burden, as a claimant of a portion of that total award, to prove the value of her interest. The record in this case is devoid of any evidence upon which to determine the value of the usufruct. Therefore, no award will be made in this connection.
EXPERT FEES
The errors alleged by plaintiff-appellant in connection with the fixing of the expert fees are as follows: (1) error in awarding an appearance fee to Thomas S. Broyles, an interested party since he was president of Acadian Development Corporation at the time of the litigation; (2) error in awarding an appearance fee to Ralph L. Davenport, an interested party since he was a part owner in the sand mine; (3) error in awarding an appearance fee to W. L. Dailey; (4) error in awarding appraisal and appearance fees to Gilbert Pilcher; and (5) error in awarding appraisal and appearance fees to George Parker, T. M. Wilkes, Allen Angers and Maurice Chap-puis.
*187 In connection with the first two assignments of error, we note the following language from the opinion of this court in State, Department of Highways v. Willet, 322 So.2d 383 (La.App. 3rd Cir. 1975): “Landowners, who incidentally are expert appraisers, are not entitled to fees for appraising and testifying in court proceedings involving their own properties.” The record before us indicates that both Thomas S. Broyles and Ralph L. Davenport fall within the language contained in the Willet case. Davenport was part owner of the sand mine. The quoted language clearly contemplates this situation. Broyles, although not part owner of any of the land or of the sand mine, was president of the lessee, Acadian Development Corporation. As such he is not entitled to compensation for appearing to testify in connection with this litigation. The appearance fees awarded to Broyles and Davenport must be disallowed.
The alleged error in awarding an appearance fee to W. L. Dailey is based on the absence from the record of any testimony or proffer of evidence by a Mr. W. L. Dailey. Our review of the record reveals that a Mr. W. L. Daly did in fact testify at the trial. Certainly this was no more than a clerical error, which does not justify a modification of the lower court’s judgment to disallow this fee.
The alleged error in awarding appraisal, and appearance fees to Gilbert Pilcher, must like the problem with the award to W. L. Dailey, is based on the fact that no such person appeared to testify at the trial. The deposition of Mr. James R. Gilbert, taken in connection with the rule to fix expert fees, indicates that he was employed by Acadian Development Corporation in January of 1971, when he worked for Gilbert & Pilcher, Incorporated, to gather information and prepare to give expert testimony in connection with the expropriation proceedings. He testified by proffer. Again, this problem appears to have arisen from a clerical error. We will allow the award to stand as is.
The alleged errors in connection with the awards to Parker, Wilkes, Angers and Chappuis are based on arguments of inaccuracies and incongruities in their reports and the use of arbitrary figures by one or more of these experts. It is further argued that some of the reports were not used by the court; therefore, no award should be made to the expert for the work done on those reports which were not used.
This expropriation case involved a unique and highly complex appraisal problem. Its unique features required many hours of field work and organization and evaluation of the information gathered in order that the various experts could prepare for presentation of the information to the court. All of the reports were used in varying degrees in the court’s process of determining what compensation was due defendants. The burden is on appellant to demonstrate to this court that the lower court clearly abused its discretion in fixing the fees of expert witnesses. State, Department of Highways v. Hoyt, 272 So.2d 768 (La.App. 3rd Cir. 1972). This burden has not been met.
Appellant has filed an exception of res judicata, arguing that language in this court’s original opinion,[3] which judgment has become final, determined the issue of what court costs were to be paid by appellant. It is argued that our prior opinion relieved appellant from paying all except stenographers’ costs for taking testimony under LSA-R.S. 13:4521.
An application for rehearing was filed by the expropriating authority. This court reviewed the basis for the original decision and affirmed it. At the conclusion this court noted that defendants had requested that we make specific awards in relation to expert fees and other costs which plain *188 tiffs were condemned to pay. We declined to deal with this issue due to a lack of evidence in the record relating to the appropriateness of the claimed fees, and stated that defendants should proceed by rule in the district court to have these costs fixed. There is no basis for the exception; therefore, it is overruled.
For the reasons assigned the judgment of the trial court authorizing the Clerk of Court to release the funds representing compensation to Mr. and Mrs. Rucks and Mrs. Simon for their interests in the expropriated lands to Mrs. Leola M. Roy is reversed. The judgment of the trial court fixing the expert fees and taxing them as court costs to be paid by plaintiffs is affirmed in all respects, except with reference to the awards to Thomas S. Broyles and Ralph L. Davenport, which must be deleted from that judgment. All costs are assessed against appellant, the Lafayette Airport Commission.
Reversed in part; affirmed in part.

. Lafayette Airport Commission, v. Roy, 265 So.2d 459 (La.App. 3rd Cir. 1972).

. This provision has been repealed by legislation passed in 1974; however, this fact does not affect its apjhicability to the facts before the court.

. Lafayette Airport Commission v. Roy, supra.