**Robert F. GONSOULIN, Sr., et al.,**

v.

**SHELL OIL COMPANY.**

**Civ. A. No. 14411.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Jan. 20, 1971.

John A. Rogers, Jeanerette, La., and Watkins, Watkins & Walker, J. Louis Watkins, Jr., Houma, La., for plaintiffs.

George C. Schoenberger, Jr. and Alvin B. Gibson, New Orleans, La., and Caffery, Duhe & Davis, John M. Duhe, Jr., New Iberia, La., for defendant.

PUTNAM, District Judge.

This is an action by mineral lessors against their lessee to cancel the lease, and to recover royalties allegedly wrongfully paid to the State as owner of cer-

tain water bottoms. The lessee has filed a motion for summary judgment.

## UNDISPUTED FACTS

On August 31, 1948, Hortense Provost Gonsoulin granted a mineral lease on a certain tract of land to defendant Shell Oil Company. The tract is traversed by a bayou.

Plaintiffs are the successors in title of Hortense Provost Gonsoulin.

Pursuant to its powers under the lease, Shell in 1951 declared a 160-acre unit, pooling with the Gonsoulin land an adjacent tract owned by the Minvielles. The unitization plat which was drawn up in connection with the unitization agreement showed that the Gonsoulins had been allocated 77.17 acres, the Minvielles 61.41 acres, and the State 21.42 acres.

The Gonsoulin heirs at that time were represented by Mr. Jacob Landry, a New Iberia attorney. The correspondence filed in the record shows that not only Mr. Landry, but also some of the heirs knew that Shell had allocated the water bottom acreage to the State.

Pursuant to the declaration of pool, the royalty owners signed a division order which authorized Shell to purchase the production and pay to each of the Gonsoulins "$\frac{1}{2}$ of $\frac{1}{8}$ of $^{7717}/_{16000}$."

Shell paid royalties in accordance with this division order until 1954, when the Gonsoulins complained that the "T" sand from which Well No. 1 was producing did not underlie the Minvielle property. An agreement was executed in which Shell agreed to pay royalty to the Gonsoulins on a lease basis with respect to production from Well No. 1 from the "T" sand, and the Gonsoulins agreed to accept royalty on a unit basis on production from all sands lower than the "T" sand.

Shell paid royalties in accordance with this agreement until the "T" sand was depleted in 1955. All other production was from sands lower than the "T" sand, and Shell paid royalties on such production according to the original division order and the subsequent division order executed in 1960 by the heirs of Joseph Gonsoulin.

On July 1, 1965, the Commissioner of Conservation issued Order No. 146–G, Unitizing the "$W_0$" sand which underlay part of the Gonsoulin tract. *No water bottoms cross that part of the Gonsoulin tract which is included in the Commissioner's unit.*

Since the creation of the Commissioner's unit, Shell has paid royalties from the "$W_0$" sand in accordance with the Commissioner's order. Proceeds from the production from the "W" sand have been paid into the registry of a State court pursuant to a concursus proceeding convoked by Shell.

## CONCLUSIONS OF LAW

This court has jurisdiction under 28 U.S.C. § 1332 and § 1441. The case was removed from the State court on the basis of diversity of citizenship and jurisdictional amount.

Contracts have the force of law between the parties. Louisiana Civil Code, Article 1945.

■ The Louisiana jurisprudence recognizes that the principle of estoppel by contract is applicable to disputes over oil and gas leases, Kaufman v. Arnaudville Co., 186 So.2d 337 (La. App. 3d Cir. 1966), writ refused, no error of law, 249 La. 575, 187 So.2d 739 (1966), and in particular to disputes over inaccurate apportionment in division orders, Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583 (1940).

■ The Gonsoulins signed the original division order and the subsequent agreement without disputing the apportionment of acreage and without reserving any rights to show a greater participation. Shell relied on these agreements and paid royalties according to their strict terms until the creation of the Commissioner's unit. Consequently, the Gonsoulins are now estopped to assert that royalties from the water bottoms were wrongfully paid to the State.

Shell, having deposited in the registry of the State court all royalties which accrued from the "W" sand, is relieved of liability as to the funds so deposited. Louisiana Code of Civil Procedure, Article 4658.

We believe that the proper remedy is for plaintiffs to bring an action against the State for unjust enrichment. See Louisiana Civil Code, Articles 2301 et seq.; Comment, Royalty Division Orders, 23 La.L.Rev. 571 (1963).

### ORDER

For the foregoing reasons, it is ordered that the Motion for Summary Judgment filed by Shell Oil Company be and the same is hereby GRANTED.