509 So.2d 1023 (1987)
WIN OIL COMPANY, INC., Plaintiff-Appellee,
v.
UPG, INC., et al., Defendants-Appellants.
No. 18771-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
*1024 Richard E. Hiller, Shreveport, for defendants-appellants.
Robert C. Lowther, Jr., Many, for plaintiff-appellee.
Before HALL, C.J., and SEXTON and NORRIS, JJ.
HALL, Chief Judge.
The defendants, UPG, Inc., Decker & Associates, Inc., and Richard E. Decker, appeal from a judgment in favor of plaintiff, Win Oil Company, Inc., in the amount of $23,291.50, representing the sales price of oil sold by Win Oil to UPG and erroneously paid by UPG to Decker & Associates, Inc., plus interest from the date of the oil sales.
The essential issues presented on appeal are whether Win Oil established its entitlement to the funds, whether Decker & Associates, Inc. and Decker individually are liable to Win Oil, and whether LSA-R.S. 31:210.1, providing for interest on the purchase price of production is applicable. We reverse the judgment against Decker & Associates, Inc. and Decker individually, amend the judgment to award interest only from the effective date of the statute and, as amended, affirm the judgment against UPG, Inc.
On October 21, 1969, Mrs. Juanita W. Kelly, executed a mineral lease in favor of Milburn E. Graves on certain property owned by her in DeSoto Parish, Louisiana, with a primary term of ten years. Mr. Graves died in January, 1977 and was survived by his wife, Orenia Ludlum Graves, and two children, Daniel Milburn Graves and Donna Rebecca Graves. On February 28, 1977, Mrs. Graves assigned her interest in the mineral lease to Win Oil Company, Inc., reserving unto herself a 1 1/6th overriding royalty interest. Win Oil Company hired Neeland Phelps, a petroleum landman, to do a title search relative to the ownership of the mineral rights on the leased land. According to Phelps, Mrs. Kelly owned the minerals involved and executed a valid lease to Mr. Graves.
Win Oil Company drilled a well on this property known as the J.C. Kelly No. 1 Well and maintained production from that well from April, 1978 until October, 1979. The transporter and purchaser of the crude oil on the Kelly well was UPG, Inc., who held the proceeds from this production in suspense rather than paying them to Win Oil because Win Oil had not yet furnished a title opinion. The funds held in suspense amounted to $23,291.50. Win Oil abandoned the well in October, 1979.
On October 9, 1979, Mrs. Graves acquired another lease on the same property from Mrs. Kelly. This lease also had a primary term of ten years. Mrs. Graves, who had subsequently married Richard E. Decker, assigned her lease interest to Rogers Oil & Gas which, in turn, assigned its interest to David Crow & Associates. Decker & Associates, Inc., a corporation whose stock was owned by Mr. and Mrs. Decker and Glen Graves, the brother of Milburn Graves, received a farmout from David Crow to reopen the well. Decker & Associates began operating the Kelly well in April, 1983.
While UPG was holding the funds from the Kelly well in suspense, it was also holding in suspense funds from the Rike well, another well operated by Win Oil. Also at this time, Win Oil had an outstanding debt with UPG in excess of $200,000.00 arising out of other business transactions. Charles Hawkins, President of Win Oil, testified that he did not do anything with the Rike and Kelly accounts at this time because he did not want UPG to set off both *1025 accounts against the debt owed by Win Oil. By the end of May, 1984, Win Oil had paid off the debt owed to UPG and UPG had paid out to Win Oil the Rike funds held in suspense on a 100% indemnity agreement. When Hawkins questioned UPG concerning the Kelly funds, he was advised that there were no funds held in suspense on the Kelly well. Hawkins was subsequently advised that those funds previously held in suspense on the Kelly well had been paid out to Decker & Associates, Inc., as the current operator of the well, on a 100% indemnity agreement.
According to Hawkins, the initial drilling and completion of the Kelly well cost in excess of $130,000,00, and the Graves children never contributed to the drilling and testing costs of this well. Furthermore, he testified that the royalty and overriding royalty interests were paid to Mrs. Kelly and Mrs. Decker out of Win Oil's own account. Richard E. Decker testified that neither he nor his corporation had an interest in the funds paid to his corporation by UPG, but he felt that at least half of the money belonged to his wife's children. However, Decker testified that he had never given any of the money to his wife's children. Decker further testified that even though no stock certificates have ever been issued for Decker & Associates, Inc. there are stock orders of record and informal meetings have been held, but there are no minutes or resolutions.
Win Oil Company brought this suit asserting several claims against UPG, Decker & Associates, Mr. and Mrs. Decker, and the Graves children, including recovery of the money paid by UPG to Decker & Associates, Inc. The trial court held that Win Oil had no cause of action or right of action against the Graves children or Mrs. Decker. Furthermore, the trial court found that Win Oil's claims against Decker & Associates for conversion of property left at the well site had prescribed.
Win Oil's claim against UPG, Decker & Associates, and Richard E. Decker for the return of the suspended funds in the amount of $23,291.50 was based on the theory that the defendants had engaged in fraudulent and deceptive business practices in violation of LSA-R.S. 51:1405(A) and plaintiff also sought treble damages and 25% attorney's fees under LSA-R.S. 51:1409 and interest under LSA-R.S. 31:210.1. The trial court held that Decker & Associates, Inc. was a "sham" corporation and rendered judgment in favor of Win Oil in the amount of $23,291.50 against UPG, Decker & Associates, Inc., and Richard E. Decker. However, the trial court refused to award treble damages and attorney's fees based on Win Oil's failure to comply with LSA-R.S. 51:1409(B). The trial court did award interest from the date of the oil sales in the amount of $18,038.60 under LSA-R.S. 31:210.1.
UPG, Decker & Associates, Inc., and Richard E. Decker raise the following issues on appeal:
1. Whether plaintiff established by a preponderance of the evidence that defendants were involved in fraudulent or deceptive business practices in violation of LSA-R.S. 51:1405;
2. If plaintiff failed to establish a violation of LSA-R.S. 51:1405, whether there was any other legal basis for recovery;
3. Whether the application of LSA-R.S. 31:210.1, awarding interest on purchase payment of production, was inappropriate because this provision was not in effect until after the events involved in this suit took place and because there was no purchase contract; and
4. Whether defendant, Richard E. Decker, is personally liable for the actions of a corporate entity known as Decker and Associates, Inc.
Appellants' argument that plaintiff failed to establish that defendants were involved in fraudulent and deceptive business practices in violation of the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq., is of no moment because the trial court found that statute to be inapplicable and the statute did not form the basis for the trial court decision.
The legal basis for the judgment against UPG is simply that it is obligated to pay *1026 the sales price of the oil purchased by it from the Kelly well to the persons entitled to such proceeds and Win Oil has established its entitlement to those funds. UPG does not argue that it is not obligated to pay the correct parties or that its payment to Decker discharged its obligation, but argues that Win Oil has not established its entitlement to the funds, particularly in view of the fact that the Graves children owned a one-half interest in the lease.
The evidence in this case establishes that Win Oil was the owner of a one-half interest in the lease and the operator of the well. Win Oil paid to the lessor and the overriding royalty interest owner all amounts due to them from production. It drilled the well near the end of the primary term of the lease. Win would be entitled to recover from the other owners of the lease their share of the expenses out of their share of production. LSA-R.S. 31:177. Since the expenses far exceed the amounts due from production, any claim the other owners have is more than offset by their share of expenses. The other owners were made parties to this suit but made no claim to the funds at issue. Decker makes no claim to the funds, except to protect the interest of his stepchildren, a position he has no standing to assert.
UPG owes the amount held in suspense to Win Oil. It matters not that UPG erroneously or mistakenly paid to Decker the amount owed to Win. UPG remains liable to Win.
LSA-R.S. 31:210.1,[1] enacted in 1982, cannot be applied retroactively so as to entitle Win Oil to interest on the funds held by UPG prior to the September 10, 1982 effective date of the statute. It is not disputed that Win Oil sold oil to UPG and it necessarily follows that the oil was delivered to UPG under a purchase contract. Accordingly, interest is due under the statute, but only from September 10, 1982.
Appellants' argument that there is no legal basis for the judgment in favor of Win Oil against Decker & Associates, Inc. and Decker personally has merit. UPG paid to Decker & Associates, Inc. money owed not to Decker & Associates, Inc., but to Win Oil. Decker & Associates is obligated to restore the money to UPG, the party making the payment, but not to Win Oil. LSA-C.C. Art. 2301; Nelson v. Young, 223 So.2d 218 (La.App. 2d Cir. 1969), writ granted, 254 La. 454, 223 So.2d 867 (1969), modified on unrelated matters, 255 La. 1043, 234 So.2d 54 (1970). That Decker & Associates became a debtor of UPG does not make it a debtor of Win Oil. Unjust enrichment is not applicable because, although Decker & Associates, Inc. has been enriched, Win Oil has not been impoverished. Win Oil remains a creditor of and entitled to be paid by UPG, and there is no indication that UPG cannot satisfy the judgment against it. La. and Southern Life Ins. Co. v. New Orleans S.S. Ass'n Internat'l Longshoreman's Ass'n (AFofL-CIO) Welfare Plan, 384 So.2d 594 (La.App. 4th Cir.1980). Accordingly, the judgment against Decker & Associates, Inc. will be reversed. This result makes it unnecessary to consider whether Richard Decker would have been personally liable for the corporate debt and it follows that the judgment against Decker individually should be reversed.
For the reasons assigned the judgment in favor of Win Oil against Decker & Associates, Inc. and Richard E. Decker is reversed and set aside and Win Oil's demands against those defendants are rejected. The judgment in favor of Win Oil against UPG, *1027 Inc. is amended to provide for legal interest on the principal amount of $23,291.50 from September 10, 1982 until paid and as amended is affirmed. All costs including the cost of appeal are assessed to UPG, Inc.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED AFFIRMED IN PART.
NOTES
[1] LSA-R.S. 31:210.1 provides as follows:

A. When mineral production has been delivered under a purchase contract but the purchaser is delaying payment for the production, pending receipt of proof of clear title or a valid division order or both, interest at the legal rate over the time period of the delay shall be paid by the purchaser on all money held for more than thirty days after payment would be due after delivery under the purchase contract. The interest earning period shall be from the date payment is due under the contract to the day disbursement is made.
B. The provisions of this section shall not apply to payments due to any person who is afforded a remedy under R.S. 31:137 through 31:142 or under R.S. 31:212.21 through 212.23 for nonpayment or delayed payment of sums due.